**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 28 2013, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**CARA SCHAEFER WIENEKE**
Special Assistant to the State Public Defender
Plainfield, Indiana

**PATRICIA CARESS MCMATH**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**NATALIE FANTETTI**
Indiana Department of Child Services
Peru, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MATTER OF L.P., | ) | |
| ALLEGED CHILD IN NEED OF SERVICES, | ) | |
| | ) | |
| S.P. and M.H., | ) | |
| | ) | |
| Appellants-Respondents, | ) | |
| | ) | |
| vs. | ) | No. 52A02-1212-JC-1028 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES | ) | |
| and MIAMI COUNTY CASA PROGRAM, | ) | |
| | ) | |
| Appellees-Petitioners. | ) | |

APPEAL FROM THE MIAMI CIRCUIT COURT
The Honorable Douglas P. Morgan, Judge Pro Tempore
Cause No. 52C01-1212-JC-90

**May 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

S.P. ("Father") and M.H. ("Mother") (collectively, "the Parents") appeal the trial court's adjudication of their child, L.P., as a child in need of services ("CHINS"). The Parents present three issues for our review, which we consolidate and restate as whether the trial court abused its discretion when it adjudicated L.P. to be a CHINS. We affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

On October 1, 2012, Sergeant Ronald Dausch of the Miami County Sheriff's Department went to the Parents' residence to serve a protective order on Father. When he arrived, Sergeant Dausch observed Father standing in front of the storm door, and Father "immediately made a quick movement" to put down something in his hand. Fact-Finding Transcript at 5. Sergeant Dausch approached Father and explained why he had arrived. Sergeant Dausch then "detected the odor of what [he] knew to be burnt marijuana." Id. at 6.

Sergeant Dausch entered the Parents' house and saw Mother and L.P. At the time, L.P. was seven months old. He then conducted a search of the Parents' house, during which he discovered marijuana in various locations, including on a couch and inside a baby food jar.[2] He further discovered "one or two pipes" and "a digital scale." Id. Sergeant Dausch asked Father about the marijuana, and "he took ownership" of it. Id. Sergeant Dausch then contacted the Department of Child Services ("DCS") and arrested the Parents.

_____

[1] Father's statement of the facts in his appellate brief is not consistent with our standard of review, contrary to Indiana Appellate Rule 46(A)(6)(b).

[2] The amount of marijuana discovered in the Parents' home is not in the record.

On October 3, the DCS filed its petition alleging L.P. to be a CHINS. The court held a fact-finding hearing on November 21. At that hearing, Family Case Manager David Balmer ("FCM Balmer") testified that he had talked to Father about Father's drug use. FCM Balmer then testified, without objection, that Father "has admitted to long[-]term chronic use since the age of approximately nine years. [H]e says that he does it as a form of self-medication because he has some mental health and learning disab[ilites] and that's how he copes with the problems." Id. at 17. FCM Balmer further testified as follows:

> Q    How is [L.P.'s] physical or mental condition seriously impaired or endangered as a result of her parents?
>
> A    Well, at this point, [Mother] is incarcerated and unable to care for her child, . . . which would have left the caring to [Father,] who admits to being a long[-]term chronic marijuana user. If he's under the influence of marijuana while trying to provide care for [L.P.], it can lead to lapses in judgment, potentially endangering her safety and well-being. If there were to be an emergency and he was under the influence, he may not be able to respond in an appropriate manner . . . .

Id. at 19. The court adjudicated L.P. to be a CHINS. This appeal ensued.

**DISCUSSION AND DECISION**

The Parents appeal the trial court's adjudication of L.P. as a CHINS. Indiana Code Section 31-34-1-1 provides that a child is a child in need of services if, before the child becomes eighteen years of age: (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be

3

provided or accepted without the coercive intervention of the court. The DCS has the burden of proving by a preponderance of the evidence that a child is a CHINS. Ind. Code § 31-34-12-3; Davis v. Marion Cnty. Dep't of Child Servs. (In re M.W.), 869 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). When reviewing the sufficiency of the evidence to support a CHINS adjudication, we consider only the evidence favorable to the judgment and the reasonable inferences raised by that evidence. In re M.W., 869 N.E.2d at 1270. This court will not reweigh evidence or judge witnesses' credibility. Id.

Moreover, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A); Menard, Inc. v. Dage–MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. Menard, 726 N.E.2d at 1210. Second, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. T.R. 52(A). While we defer substantially to findings of fact, we do not do so to conclusions of law. Menard, 726 N.E.2d at 1210. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

The Parents first assert that the trial court's order is clearly erroneous because there is no evidence that Father is a chronic marijuana user, as opposed to drugs generally. See Father's Br. at 4; Mother's Br. at 5-6. We are not persuaded by the purported relevance of the distinction. Father admitted to being a "long[-]term chronic [drug] use[r] since the age of approximately nine years . . . ." Fact-Finding Transcript at 17. Whether he chronically uses marijuana, other drugs, or a combination of marijuana and other drugs, Father's admission demonstrates a clear problem with drug use. We will not reverse the court's judgment on this purported distinction.

The Parents next assert that the court's order is contrary to this court's opinion in Perrine v. Marion County Office of Child Services, 866 N.E.2d 269 (Ind. Ct. App. 2007). In Perrine, mother was arrested as part of a routine probation sweep, which located paraphernalia commonly used for methamphetamine consumption in the bedroom of a houseguest. Mother admitted to using methamphetamine a few days prior to the probation sweep. As a result of her arrest, the DCS filed a petition alleging her fourteen-year-old daughter was a CHINS based on mother's failure to provide her child with a safe and stable home, free from drug use and neglect. The trial court found the child to be a CHINS. In reviewing the evidence, we noted that the evidence did not support a finding that mother used methamphetamine in front of her daughter. Id. at 276. We reversed the trial court's determination on appeal, finding that a "single admitted use of methamphetamine, outside the presence of the child and without more, is insufficient to support a CHINS determination." Id. at 277.

Perrine is plainly inapposite to the instant facts. Father admitted he was a chronic drug user, saying "he does it as a form of self-medication." Fact-Finding Transcript at 17. Sergeant Dausch observed Father smoking marijuana in the house with L.P. on October 1, 2012. Sergeant Dausch further discovered marijuana scattered throughout the house, including on a couch and in a baby food jar. These facts go well beyond a "single admitted use . . . outside the presence of the child and without more . . . ." Perrine, 866 N.E.2d at 277.[3]

Finally, while Mother separately argues that "there is no evidence [she] uses drugs in or out of L.P.'s presence," see Mother's Br. at 6, that fact is not persuasive. As discussed above, the evidence most favorable to the trial court's judgment demonstrates that Father, with Mother's knowledge, routinely used drugs and possessed marijuana in the home with the child. As the trial court concluded: "This is not a one[-]time event outside the child's presence but instead is a daily feature of her life and environment." Mother's App. at 10. The Parents' arguments on appeal amount to requests for this court to reweigh the evidence, which we will not do. The Parents cannot demonstrate that the trial court's judgment is clearly erroneous, and we affirm the court's adjudication of L.P. as a CHINS.

Affirmed.

BAILEY, J., and BARNES, J., concur.

---

[3] Insofar as the Parents separately assert that this evidence "did not show that [Father's marijuana use] was a daily feature of L.P.'s life and environment," see Father's Br. at 7, for the same reasons Perrine is inapposite we reject this argument.