**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 09 2013, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NOAH L. GAMBILL**
Wagner Crawford and Gambill
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**ELIZABETH A. LEWIS**
DCS, Local Office in Vigo County
Terre Haute, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF S.K., <br> A CHILD IN NEED OF SERVICES, <br><br> and, <br><br> A.R., <br><br>     Appellant-Respondent, <br><br>     vs. <br><br> THE INDIANA DEPARTMENT OF <br> CHILD SERVICES, <br><br>     Appellee-Petitioner. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     No. 84A05-1301-JC-7 <br> ) <br> ) <br> ) <br> ) <br> ) |

APPEAL FROM THE VIGO CIRCUIT COURT
The Honorable David R. Bolk, Judge
The Honorable Daniel W. Kelly, Magistrate
Cause No. 84C01-1204-JC-486

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

A.R. ("Mother") appeals the determination that her son, S.K., is a child in need of services ("CHINS"). We affirm.

## Issue

Mother raises one issue, which we restate as whether there is sufficient evidence to support the trial court's determination that S.K. is a CHINS.

## Facts

On February 28, 2012, then fourteen-year-old S.K. called the Department of Child Services ("DCS") to report that he was staying with the Catons, close family friends, in Terre Haute because of Mother's homelessness and Mother's alleged methamphetamine use. Kerri Brown, a DCS family case manager, opened the investigation and unsuccessfully attempted to contact Mother. Because Mother had voluntarily placed S.K. with the Catons, the Catons were willing and able to care for S.K., and S.K. wanted to be with the Catons, Brown began the process of closing the case.

Mother got her own apartment, and S.K. moved back in with Mother on April 6, 2012. On April 9, 2012, while the case was still in the process of being closed, S.K. contacted Brown and told her that he was scared because Mother and a friend had smoked methamphetamine in a bedroom of the apartment. Brown contacted police, who

conducted a welfare check. Deputy Joe Kenworthy of the Vigo County Sheriff's Department investigated. S.K. told Deputy Kenworthy that Mother and her friend had left to sell Sudafed to earn money for dinner. S.K. showed Deputy Kenworthy a crack pipe he had found in the bedroom. Deputy Kenworthy noted that there was no food in the apartment.

When Mother returned, she was "very, very agitated," and Deputy Kenworthy believed "that probably she was tweaking a little." Aug. Tr. p. 6. Mother's emotions were like a roller coaster, and Deputy Kenworthy did not think S.K. would be safe there. When Debbie Seifert from DCS arrived, Mother refused a drug screen but agreed to allow S.K. to return to the Catons for the night.

Mother met with Brown the next day and again refused a drug screen and refused all services. Mother did agree to allow S.K. to remain with the Catons and to begin guardianship proceedings to allow her some time to get on her feet financially. Although Mother initiated guardianship proceedings, she later changed her mind.

On April 16, 2012, Mother contacted Brown demanding to know why S.K. was home sick that day, and Brown informed her that she did not know because S.K. was not a ward of the State. Later that day, the principal from S.K.'s high school called Brown and told her that Mother was "yelling and screaming inside the school." Id. at 27.

On April 18, 2012, DCS filed a petition alleging that S.K. was a CHINS. That same day, Mother submitted to a drug screen, which was positive for methamphetamine. The next day, she submitted to another screen, which was negative. Mother refused all further drug screens. On August 7, 2012, and October 9, 2012, fact finding hearings were

3

held at which S.K., who was then fifteen years old, testified. On October 22, 2012, the

trial court issued an order finding:

1. That on May 15, 2012, the father, [L.K.], admitted to all of the facts contained in the DCS petition.

2. That at the factfinding hearing held on August 7, 2012 and concluding on October 9, 2012, Vigo County Sheriff Reserve Deputy Joe Kenworthy presented testimony that on April 9, 2012, he was dispatched to International Village Apartments to conduct a well-child check and met with [S.K.], who advised that he had been living with a friend but had returned home three days earlier. [S.K.] informed that officer that his mother, who used to use drugs, had a friend come over and go into his mother's bedroom and smoke something. He said that they were in the room for about 15 minutes and when they came out, the room was smoky. His mother told [S.K.] that she was leaving to go sell some Sudafed. [S.K.] told the officer that he found a crack pipe in the house and the pipe was photographed. The officer observed that there was no food in the cabinets or refrigerator. Officer Kenworthy testified that when he discussed the matter with [Mother], she was highly agitated and would blow up in anger, calm down, and pace furiously, all in rapid succession. [S.K.] stated that he had received numerous texts from his mother, admitting that she had returned to using methamphetamines.

3. FCM Debbie Siefert testified that when she arrived at the home to speak with [S.K.] and [Mother], [S.K.] disclosed that he did not feel safe at home as a result of his mother's erratic behavior. [Mother], who had been yelling and pacing in the room, refused to submit to a drug screen, but ultimately agreed to a safety plan that allowed [S.K.] to temporarily return to the home of the friend he had been living with until shortly before this incident.

4. FCM Carrie [sic] Brown presented testimony that she had investigated an earlier report of [Mother] smoking meth in [S.K.'s] presence, which was not substantiated. But she then investigated the 4-9-12 report and learned, among other things, that on April 16, 2012, [Mother] had come to South

4

Vigo High School to discuss her son's situation with the principal, Chris Mauk. During the meeting, . . . [Mother] was "sweating profusely and very agitated about her son." She "became mad at points and also broke down into tears at other points."

5.      FCM Brown also testified that DCS substantiated the 4-9-12 report for "neglect for environment life/health endangering." At the conclusion of the initial hearing on 4-18-12, the court ordered [Mother] to submit to a drug screen, and the test results, which were admitted into evidence as "Petitioner's Exhibit I," showed the presence of meth in [Mother's] system.

6.      The minor child, [S.K.], provided background information that demonstrated that he had lived with his father for several years until 2009 due to his mother's incarceration, and that the three-year period of his reunification with his mother was marked by long periods of her drug use, domestic violence and housing instability, resulting in [S.K.] living away from his mother and with others for much of the time. [S.K.] had only returned to mother's home three days before the 4-9-12 incident.

App. pp. 6-7. The trial court concluded that S.K. was a CHINS. Mother now appeals.

**Analysis**

The CHINS petition was based on Indiana Code Section 31-34-1-1, which provides:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

5

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

A CHINS proceeding is a civil action, and the State is required to prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. In re K.D., 962 N.E.2d 1249, 1253 (Ind. 2012). In our review of a CHINS determination, we consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom, and we neither reweigh the evidence nor judge the credibility of the witnesses. Id.

Because the trial court issued findings and conclusions, our standard of review is two-tiered. In re A.I., 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), trans. denied. "First, we must determine whether the evidence supports the findings and, second, whether the findings support the conclusions of law." Id. "In deference to the trial court's unique position to assess the evidence, we set aside the trial court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous." Id. A finding is clearly erroneous when there are no facts or inferences drawn therefrom to support it. A judgment is clearly erroneous only if the conclusions of law drawn by the trial court are not supported by its findings or the conclusions do not support the judgment.

Mother argues, "[t]he trial court's decision is clearly erroneous because there is no evidence that would support a CHINS adjudication based on alleged illegal drug usage." Appellant's Br. p. 17. Mother relies on Perrine v. Marion Cnty. Office of Child Servs., 866 N.E.2d 269, 277 (Ind. Ct. App. 2007), in which we held "that a single admitted use

6

of methamphetamine, outside the presence of the child and without more, is insufficient to support a CHINS determination." We also concluded "[t]he mere presence of drug paraphernalia in a bag in the residence is insufficient to support a finding of neglect under Indiana Code Section 31-34-1-1." Perrine, 866 N.E.2d at 277.

To the extent Mother denies that she smoked methamphetamine and argues that there is not clear evidence drug use took place, she is asking us to reweigh the evidence, which we cannot do. The positive drug screen, S.K.'s assertions, the paraphernalia found in the room shortly after Mother was alleged to have been smoking, Mother's history of drug use, and the testimony of Mother's erratic and agitated behavior support the inference of drug use. This case is distinguishable from Perrine because it does not involve a single admitted use of methamphetamine outside the presence of a child or the mere presence of drug paraphernalia in the residence.

Further, although Mother claims that many of the findings are not supported by the evidence, our review of the record confirms that the trial court's findings accurately reflect the testimony of the various witnesses. To the extent Mother, based largely on her own testimony, challenges these findings, she is asking us to reweigh the evidence. We cannot do that.

Mother also asserts that the trial court should not have considered any alleged occurrences before April 9, 2012, because, "[a]s a matter of public policy, it is counterintuitive that a trial court should rely on previous acts not related to events in the underlying petition." Appellant's Reply Br. p. 7. This argument is flawed because the petition references S.K. having been with the Catons for the last five months because he

was homeless, Mother using drugs, and the February 2012 report to DCS. Thus, these matters were related to allegations in the petition.

Mother also contends it was clearly erroneous to find S.K. to be a CHINS based on her behavior, "when the Mother is upset and frustrated that a system meant to protect children is inserting itself into a family situation that she strongly feels is unnecessary and intrusive." Appellant's Br. p. 19. As our supreme court has observed, however, "[a] CHINS adjudication focuses on the condition of the child." In re N.E., 919 N.E.2d 102, 105 (Ind. 2010). Further:

> While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent. . . . In fact, a CHINS intervention in no way challenges the general competency of a parent to continue a relationship with the child.

Id. Thus, to the extent Mother's behavior impacts S.K., it is a relevant basis for determining whether he is a CHINS.

As for Mother's assertion that it was clearly erroneous for the trial court to rely on Father's admission when he had not been involved in S.K.'s life for the past three years, we do not believe the trial court's determination that S.K. was a CHINS was based on this admission. Instead, it is clear that the determination was based on the extensive evidence of Mother's unstable housing and financial situation over the past several months, her erratic behavior toward police officers, DCS workers, and school officials,

S.K.'s fear of Mother, and the purported drug use. The evidence supports the trial court's findings, and the findings support the determination that S.K. is a CHINS.

## Conclusion

Mother has not established that the trial court's determination that S.K. is a CHINS is clearly erroneous. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.