**Susan PERRINE, Appellant,**

v.

**MARION COUNTY OFFICE OF CHILD SERVICES and Child Advocates, Inc., Appellees.**

No. 49A02–0608–JV–657.

Court of Appeals of Indiana.

March 6, 2007.

Publication Ordered April 20, 2007.

Jan B. Berg, Indianapolis, IN, Attorney for Appellant.

Elizabeth Filipow, Marion County Department of Child Services, Indianapolis, IN, Attorney for Appellees.

**OPINION**

NAJAM, Judge.

**STATEMENT OF THE CASE**

Susan Perrine ("Mother") appeals from the trial court's determination that her minor daughter, L.S., is a child in need of services ("CHINS"). Mother presents a single issue for our review, namely, whether the evidence is sufficient to support the CHINS determination.

We reverse.

**FACTS AND PROCEDURAL HISTORY**

On November 11, 2005,[1] the Johnson County authorities conducted a routine probation sweep. The sweep included Mother's Marion County residence, where Mother resided with her husband, Steven Perrine, and her disabled daughter, L.S., who was then fourteen years old. At the time of the sweep, the family also had a temporary adult houseguest.

In the course of searching Mother's residence, the Johnson County authorities found paraphernalia commonly used for methamphetamine consumption in a bag in the bedroom, but they found no methamphetamine or other drugs. The bag belonged to the Perrines' houseguest. As a result of the paraphernalia discovery, Marion County law enforcement[2] arrested Mother and her husband for reckless possession of paraphernalia, child neglect, and child endangerment.

At the time of her arrest, Mother explained that L.S. is disabled and asked whether she could call someone to care for L.S. Mother's son, parents, brother, and landlord were trained in how to care for the child's special needs. The landlord lived downstairs from Mother's residence, and her parents and brother lived between three and ten minutes away. The Johnson County authorities denied that request

---

1. The petition alleges that Mother and her husband were arrested on November 10, 2005, but the parties list the date of the probation sweep as November 11, 2005.

2. Marion County law enforcement made the arrest because the home is in Marion County.

and, instead, sent L.S. to Wishard Hospital for evaluation. After the evaluation, Wishard Hospital employees reported to the Marion County Department of Child Services ("DCS") that there was no one legally responsible to pick up L.S. upon her discharge. DCS investigated L.S.'s circumstances as a result of that report and placed L.S. in a group facility after her discharge.

Mother remained incarcerated from late on the night of her arrest until approximately 9:00 a.m. the following morning. Upon her release, DCS investigator Jennifer Sweazy interviewed Mother at the home of Mother's parents. During the interview, Mother admitted that she had been arrested for reckless possession of paraphernalia, child neglect, and child endangerment. Mother also admitted that she had used methamphetamine on the Wednesday or Thursday before her arrest.

As a result of the investigation, DCS filed a petition alleging that L.S. was a child in need of services. The petition alleged, in relevant part:

> 5. The children [sic] are Children [sic] in Need of Services as defined in [Indiana Code] 31–34–1 in that: one or more of the children's [sic] physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of a parent, guardian or custodian to supply one or more of the children with necessary food, clothing, shelter, medical care, education or supervision; and the children [sic] need care, treatment or rehabilitation that the children [sic] are not receiving and are unlikely to be provided or accepted without the coercive intervention of the Court, as shown by the following, to wit:
>
> A) On or about November 14, 2005, the Department of Child Services (DCS) determined, by its Family Ca-

semanager (FCM) Jennifer Sweazy, this child to be a child in need of services because her mother, and sole legal custodian, Susan Perrine, has failed to provide her child with a safe and stable home, free from drug use and neglect. Ms. Perrine and her husband, Steven Perrine, were arrested and incarcerated on or about November 10, 2005 for reckless possession of paraphernalia and neglect of a dependent. [L.S.] is mentally handicapped, has a seizure disorder, and is unable to independently care for herself. Ms. Perrine admitted to recent use of methamphetamines [sic] to FCM Sweazy. At this time, the child is endangered in the care of her mother. . . .

Appellant's App. at 19.

The trial court held an initial hearing on the CHINS petition on November 15 and December 1, 2005, and it held a pretrial hearing on February 15, 2006. After a factfinding hearing on April 20, 2006, the trial court found, in relevant part, as follows:

> 5. On or about November 14, 2005, DCS received a report alleging that [L.S.] had been transported to Wishard Hospital after [Mother and her husband] were arrested by the Indianapolis Police Department after the Johnson County Sheriff's Department conducted a probation sweep.
>
> 6. Officers found several items in the Perrine's [sic] home that are commonly used in the use of methamphetamine.
>
> 7. [Mother and her husband] were both arrested for reckless possession of paraphernalia, neglect of a dependent and child endangerment. [Mother's husband] was also arrested for a probation violation.

\* \* \*

10. [Mother] had used methamphetamine the Wednesday or Thursday prior to [the DCS] investigation.

11. [Mother] is the sole legal custodian of [L.S.]

12. [L.S.] is mentally handicapped and suffers from a seizure disorder.

13. DCS substantiated the original allegations of neglect because the mother, Susan Perrine, used methamphetamine the Wednesday or Thursday prior to this investigation and was arrested for reckless possession of paraphernalia, neglect of a dependent and child endangerment, leaving no one legally responsible to care for [L.S.]

Appellant's App. at 72–73. The court then concluded that L.S. is a CHINS as defined by Indiana Code Section 31–34–1–1:[3] "[L.S.] is a child in need of services because her [Mother] used methamphetamine and was arrested for reckless possession of paraphernalia, neglect of a dependent and child endangerment, leaving no one legally responsible to care for [L.S.]" Appellant's App. at 73. At the dispositional hearing on June 14, 2006, the court ordered L.S.'s continued placement outside of Mother's home. Mother appeals the CHINS determination.

## DISCUSSION AND DECISION

Indiana Code Section 31–34–1–1 provides that a child under eighteen years old is a CHINS if:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and;

(2) the child needs care, treatment or rehabilitation that the child:

(A) is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

DCS has the burden of proving by a preponderance of the evidence that L.S. was a CHINS. *See* Ind.Code § 31–34–12–3. When reviewing the sufficiency of evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Hallberg v. Hendricks County Office of Family & Children,* 662 N.E.2d 639, 646 (Ind.Ct. App.1996). We will not reweigh the evidence or judge the credibility of witnesses. *Id.*

 The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A); *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000). In our review, we first consider whether the evidence supports the factual findings. *Menard,* 726 N.E.2d at 1210. Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard,* 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. Ind. Trial R. 52(A). While we defer substantially to findings of fact, we

3. The trial court did not specify this particular section of the code but quoted some of the language from it.

do not do so to conclusions of law. *Menard*, 726 N.E.2d at 1210. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind.1999).

Here, Mother argues that the evidence is insufficient to support the CHINS determination. Specifically, Mother contends that the evidence does not support the trial court's findings of fact and that the findings do not support the trial court's conclusions. We address each contention in turn.

### Findings of Fact

■ Mother alleges that the evidence does not support the trial court's findings of fact. Specifically, she argues that the evidence does not support findings five and thirteen. Finding five states:

> On or about November 14, 2005, DCS received a report alleging that the child, [L.S.], had been transported to Wishard Hospital after her mother, Susan Perrine, and her step-father, Steven Perrine, were arrested by the Indianapolis Police Department after the Johnson County Sheriff's Department conducted a probation sweep.

Appellant's App. at 72. We agree with Mother that the evidence does not support the date listed in that finding. Instead, the evidence shows that DCS received a report alleging neglect on November 12, 2005, and that DCS then substantiated that report on November 14, 2005.

But although finding five inaccurately states the date of the report, that inaccuracy does not undermine the remainder of that finding. Mother does not contest that she was arrested or that she was unavailable for L.S. during the period of her incarceration. And the trial court qualified the date by stating *"on or about* November 14, 2005." *Id.* (emphasis added).

Mother has not shown that the ambiguity in the date created any confusion with other events or grounds for a DCS investigation. Thus, although the date in finding five is technically incorrect, we find that the evidence supports finding five, given the qualifying language before the date and the circumstances of this case.

■ Mother also argues that the evidence does not support finding thirteen. That finding provides:

> DCS substantiated the original allegations of neglect because the mother, Susan Perrine, used methamphetamine the Wednesday or Thursday prior to this investigation and was arrested for reckless possession of paraphernalia, neglect of a dependent and child endangerment, leaving no one legally responsible to care for [L.S.]

*Id.* at 72–73. Again, Mother does not contest that she was incarcerated. Instead, she alleges that she was available to care for L.S. except for the short period of her incarceration and that law enforcement, not Mother, decided to send L.S. to Wishard Hospital for evaluation. DCS counters that Mother has offered no evidence to contradict the part of the finding alleging that there was no one *"legally* responsible" available to care for L.S. during Mother's absence. Appellee's Brief at 5.

The trial court's finding thirteen is not specific as to when there was no one legally responsible to care for L.S. The finding that no one legally responsible was available to care for L.S. may reasonably be interpreted to apply only to the period of Mother's incarceration, and the evidence supports such a finding. Because Mother has not contested that she was unavailable to care for L.S. during the period of Mother's incarceration, we cannot say that finding thirteen is clearly erroneous.

## Conclusions of Law

Having determined that the evidence supports the findings, we next consider whether the findings support the trial court's conclusions. The trial court concluded, in relevant part, as follows:

3. [L.S.] is a child in need of services as defined in [Indiana Code] 31–34–1 in that her physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal or neglect of her parent, guardian or custodian to provide her with necessary food, clothing, shelter, medical care, education or supervision.

4. [L.S.] is a child in need of services because her mother, Susan Perrine, used methamphetamine and was arrested for reckless possession of paraphernalia, neglect of a dependent and child endangerment, leaving no one legally responsible to care for [L.S.]

5. [L.S.] needs care, treatment or rehabilitation that she is not receiving and that is unlikely to be provided or accepted without the coercive intervention of the Court.

Appellant's App. at 73. In essence, the trial court determined that L.S. is a CHINS as defined by Indiana Code Section 31–34–1–1 because Mother (1) used methamphetamine; and (2) was arrested for reckless possession of paraphernalia, neglect of a dependent, and child endangerment, "leaving no one legally responsible to care for [L.S.]" Appellant's App. at 73. We address each in turn.

The trial court concluded, in part, that L.S. is a CHINS as defined by Indiana Code Section 31–34–1–1 because her Mother admitted to using methamphetamine the Wednesday or Thursday before the DCS investigation. Mother contends that the findings do not support this conclusion because the "CHINS statute requires DCS to prove more than one[-]time drug use or being in the wrong place at the wrong time." Appellant's Brief at 13. DCS counters that the conclusion is supported by the findings because Mother admitted to using methamphetamine in front of L.S. DCS also argues that a "reasonable parent does not use methamphetamine." Appellee's Brief at 7. We first address Mother's alleged admission.

In its brief, DCS cites to a redacted quote of Mother's testimony during cross-examination to show that Mother admitted to using methamphetamine in front of L.S. Specifically, when asked whether the Wednesday or Thursday before the DCS investigation was the only time Mother had ever used methamphetamine, DCS quoted Mother as responding, "Well around [L.S.] . . . yes." Appellee's Brief at 6 (citing Transcript at 36). But Mother's unredacted testimony in that regard was as follows:

Q: Did you hear Ms. Sweazy testify . . .

A: Yes I did.

Q: That she indicated that you told her that you had used, I believe the previous Wednesday or Thursday?

A: I told her a week before that. Wednesday or Thursday.

Q: Okay. Before the time that [L.S.] was removed?

A: Right.

Q: Okay. Is that the only time you ever used methamphetamine?

A: Well around [L.S.], till [L.S.] got taken from me, yes.

Transcript at 35–36. Mother further testified:

Q: Okay. Okay. You testified that you had used it about a week before?

A: Right.

Q: [L.S.] was taken?

A: Right.

Q: Was that, where, where were you when you used it?

A: I was at a friend's house.

Q: At a friend's house?

A: [L.S.] ... I've never used drugs around [L.S.] Never ever. Even prescription medicine, if it makes me sleepy, if it makes me drowsy, I tell them I can't take it.

Transcript at 36–37.

The trial court made no finding to the effect that Mother used methamphetamine in front of L.S. And Mother's testimony, when read in its entirety, does not support such a finding. Indeed, her response, "Well around Lauren, till Lauren got taken from me, yes[,]" when read in context, does not indicate that she used the drug in proximity to L.S. Instead, that testimony could reasonably be construed to be part of an incomplete response, which she then started anew and which had nothing to do with L.S.'s presence. Thus, DCS' argument, that Mother's methamphetamine use in front of L.S. supports the conclusion that L.S. is a CHINS, is without merit.

■ We next must consider whether evidence of a single instance of drug use outside of the child's presence is sufficient for finding that child to be a CHINS. While we found no CHINS cases directly on point, the supreme court considered whether drug use in front of a child constituted criminal neglect in *White v. State*, 547 N.E.2d 831 (Ind.1989). There, that court held that the evidence was sufficient to support a conviction for Neglect of a Dependant, as a Class D felony, where the parent repeatedly exposed his minor child and her friend to marijuana smoking and invited his child to try the drug. The court reasoned that "the knowing exposure of a dependent to an environment of illegal drug use poses an actual and appreciable danger to that dependent and thereby constitutes neglect regarding the endangerment requirements of the offense." *White*, 547 N.E.2d at 836.

As noted above, DCS cited to *White* in support of its contention that Mother's exposure of L.S. to "an environment of illegal drug use pose[d] and [sic] actual and appreciable danger to that dependant and thereby constitutes neglect." Appellee's Brief at 6 (citing *White*, 547 N.E.2d at 836). But in *White*, the parent repeatedly exposed his child and her friend to drug use and even invited the child to smoke marijuana. Here, the CHINS petition was based, in relevant part, on Mother's admission to a single recent use of methamphetamine and to a home not free of drug use. The trial court found that Mother admitted to a single episode of methamphetamine use the Wednesday or Thursday before the DCS investigation. The trial court made no finding as to where that incident occurred, but Mother testified that it occurred at a friend's house.

*White* does not support DCS' argument. Indeed, we found no Indiana CHINS cases in which a single occurrence of drug use, outside of the child's presence, has been found sufficient to support a CHINS determination. Thus, we conclude that the trial court's conclusion that L.S. is a CHINS based on Mother's admitted use of methamphetamine the Wednesday or Thursday before the DCS investigation is clearly erroneous.

■ Finally, we consider whether the trial court erred when it concluded that L.S. is a CHINS because Mother was arrested, leaving no one "legally responsible" to care for the child and that the coercive intervention of the court was necessary. Appellant's App. at 73. Mother does not contest that she had sole custody of L.S., but she contends that the findings do not

support those conclusions because she was available to care for L.S. at all times except for the "approximately six to nine hours" that she spent incarcerated. Appellant's Brief at 12. While Mother was indeed unavailable during her incarceration, we conclude that she was unreasonably prevented from providing a caretaker for her child.

The trial court determined that L.S. was a CHINS as defined by Indiana Code Section 31–34–1–1 because, after Mother's arrest, no one legally responsible was available to care for L.S. At the time of her arrest, Mother requested permission to call someone to come and care for L.S. The persons trained in L.S.'s care, Mother's parents and brother, live three to ten minutes from her residence. But law enforcement refused that request and, instead, sent L.S. to Wishard for evaluation.

Mother does not contest that she was not available to receive L.S. upon her discharge from Wishard. But the record does not indicate when L.S. was discharged from Wishard Hospital. And, as noted above, Mother's attempt to arrange for a caretaker for L.S. was thwarted when law enforcement refused to allow her to make a phone call. Mother points out that the charges against her were dropped shortly after she was released. Moreover, neither the CHINS statutes nor the case law interpreting those statutes require a child's caretaker to be one who is "legally responsible" for the child. On these facts, we cannot say that coercive intervention of the court was necessary to assure that L.S. would receive the care, treatment, or rehabilitation that she needs.

■ DCS argues that the trial court's conclusions are not clearly erroneous because Mother allowed a known drug user to reside with the family. But the trial court did not find that there was drug use in Mother's home, nor did it make any determination regarding the Perrines' houseguest. Rather, the trial court found that law enforcement found drug paraphernalia in the home. The mere presence of drug paraphernalia in a bag in the residence is insufficient to support a finding of neglect under Indiana Code Section 31–34–1–1. See Bean v. State, 818 N.E.2d 148, 152 n. 3 (Ind.Ct.App.2004) (noting, in criminal neglect context, it is not the possession of illegal drugs in the presence of children that endangers them but rather the illegal use of drugs or dealing in illegal drugs which has been found to endanger children when done in their presence).

## Conclusion

We conclude that the trial court's findings five and thirteen are supported by the evidence. But we further conclude that conclusions three, four, and five are clearly erroneous. Specifically, we hold that a single admitted use of methamphetamine, outside the presence of the child and without more, is insufficient to support a CHINS determination. We further hold that Mother was prevented from arranging for trained child care for her disabled daughter at the time of her arrest. Thus, the trial court clearly erred when it concluded that the unavailability of someone "legally responsible" to care for L.S. at the time of Mother's arrest and incarceration supported its CHINS determination. Therefore, we reverse the trial court's judgment.

Reversed.

MAY, J., and MATHIAS, J., concur.

### ORDER

On March 6, 2007, this Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellant, by counsel, has filed a Motion to Publish Memorandum Deci-

sion. The Appellant states that the Memorandum Decision has significant value as precedent. Therefore, Appellant requests this Court publish this opinion.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS: 1. The Appellant's Verified Motion to Publish Opinion is GRANTED and this Court's opinion heretofore handed down in this cause on March 6, 2007, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

All Panel Judges Concur.