**In the Matter of T.S.**

**Ashley Shipley, Appellant–Respondent,**

**v.**

**Marion County Division of Family and Children, Appellee–Petitioner,**

**and**

**Child Advocates, Inc., Co–Appellee–Guardian ad Litem.**

**No. 49A04–0708–JV–473.**

Court of Appeals of Indiana.

March 12, 2008.

---

Elizabeth Gamboa, Franklin, IN, Attorney for Appellant.

Kimberly Spindler, Marion County Department of Child Services, Indianapolis, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Ashley Shipley ("Mother") appeals determination her son, T.S., is a child in need of services ("CHINS").[1] We affirm.

## FACTS AND PROCEDURAL HISTORY

When Mother gave birth to T.S. on May 7, 2007, she had been in Larue Carter Hospital for four months pursuant to an involuntarily commitment and would continue to stay there for an indefinite length of time. Mother informed a DCS caseworker that she had unsuccessfully attempted to arrange an adoption of T.S., but that she hoped her mother, Gail Shipley ("Grandmother"), would be able to adopt him. DCS did not place T.S. with Grandmother because staff at Larue Carter expressed concerns regarding Grandmother and because Mother had spent one week in foster care as a child for undisclosed reasons.

On June 1, 2007, DCS filed a petition alleging:

> On or about May 8, 2007, the Marion County Department of Child Services (MCDCS) determined by its Family Casemanager (FCM) Jenni Beyersdorfer, the child to be a child in need of services because the child's mother, Ashley Shipley, and sole legal custodian of [T.S.] is under a civil committed [sic] to Larue Carter and is unable to care for the child. The maternal grandmother is not an appropriate caregiver because she has numerous substantiated CPS histories.

(App. at 19–20.)

On July 24, 2007, the court heard evidence to determine whether T.S. was a CHINS. At the end of the hearing, the court stated:

> All right the courts heard the evidence, considered the testimony, the witnesses. We'll find that mother was uh, involuntary uh, involved in a civil commitment

---

1. Prior to the CHINS determination, Mother informed DCS of the name of T.S.'s alleged father. However, as of the CHINS hearing, DCS had been unable to contact him. The court found T.S. was a CHINS only with regard to Mother.

and thus unable to successfully care for her child with no viable option. I am going to find the department has met it's burden by the preponderance of evidence to adjudicate the child to be in need of services through respected mother Miss. Shipley.

(Tr. at 25) (errors in original).

## DISCUSSION AND DECISION

Pursuant to Ind.Code § 31–34–1–1, a child under eighteen years of age is a CHINS if:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment or rehabilitation that the child:

(A) is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

A DCS must prove those elements by a preponderance of the evidence. Ind.Code § 31–34–12–3.

■■■■ When we review the trial court's CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences therefrom. *Perrine v. Marion County Office of Child Servs.*, 866 N.E.2d 269, 273 (Ind.Ct. App.2007). We may neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.*

■■■■ Mother first asserts the court's written order contained "boilerplate" findings that were inadequate to satisfy the statutory requirement for findings. (Appellant's Br. at 14.) Ind.Code § 31–34–19–10 provides:

(a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:

(1) The needs of the child for care, treatment, rehabilitation, or placement.

(2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.

(3) Efforts made, if the child is a child in need of services, to:

(A) prevent the child's removal from; or

(B) reunite the child with;

the child's parent, guardian, or custodian in accordance with federal law.

(4) Family services that were offered and provided to:

(A) a child in need of services; or

(B) the child's parent, guardian, or custodian;

in accordance with federal law.

(5) The court's reasons for disposition.

(b) The juvenile court may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

The trial court's written order provided in relevant part:

The Court having heard the statements and considered the file and facts in this matter, now finds the child to be in need of services. The Court finds by a preponderance of the evidence by trial that the child is in need of services.

The Court finds that reasonable efforts have been offered and available to prevent or eliminate the need for removal from the home. After reviewing the reports and information from the Office of Family and Children, service provid-

ers and other sources, which the Court now incorporates into this order (see Court file), the Court also finds that the services offered and available have either not been effective or been completed that would allow the return home of the child without Court intervention.

The Court finds that it is contrary to the health and welfare of the child to be returned home and that reasonable efforts have been made to finalize a permanency plan for the child [sic]

The Court orders the child to be a ward of the Marion County Office Of Family and Children. The Court orders that the responsibility for placement and care of the child is ordered to the Marion County Office of Family and Children, with placement at: continued in foster care.

The Court now orders the child removed from the care of the mother, Ashley Shipley pursuant to this Dispositional Order.

The Plan for permanency: Reunification with parent(s) [sic]

(App. at 11–12.)

We agree with Mother that the court's written "findings" consist predominantly of boilerplate language that would not be helpful to a reviewing court and, therefore, generally would not be sufficient to permit appellate review. *See In re J.Q.*, 836 N.E.2d 961, 967 (Ind.Ct.App.2005) (reversing CHINS determination with substantially similar findings because findings were insufficient), *reh'g denied.* In *J.Q.*, we explained:

The limited findings of the trial court, on record at least, make it difficult for this court to determine whether or not a mistake has been made in adjudicating J.Q. as a CHINS. Our review of the record in its entirety yields evidence that could support either outcome, but we are in no position to reweigh such evidence. However, we are also not in the position to read the trial court's mind in regard to its findings of fact. Indiana Code § 31–34–19–10(5) requires that the trial court give reasons for its disposition in a CHINS proceeding. Specifically, we are concerned that procedural irregularities, like an absence of clear findings of fact, in a CHINS proceeding may be of such import that they deprive a parent of procedural due process without respect to a potential subsequent termination of parental rights. Our legislature's enactment of an interlocking statutory scheme governing CHINS and involuntary termination of parental rights compels this court to make sure that each procedure is conducted in accordance with the law. Both statutes aim to protect the rights of parents in the upbringing of their children, as well as give effect to the State's legitimate interest in protecting children from harm. We conclude that in order to properly balance these two interests, the trial court needs to carefully follow the language and logic laid out by our legislature in these separate statutes.

*Id.* at 966–67.

Nevertheless, we need not reverse because in this case there were few, if any, factual questions for the court to resolve.[2] A probate court had committed Mother indefinitely to inpatient mental health treatment. Because she presumably could not take T.S. to Larue Carter with her, Mother was unavailable to care for him, and no services the State might offer would decrease the need for someone besides Mother to care for T.S. As there was no "home" to which T.S. could be

---

2. We note the court's statement at the end of the hearing explained its rationale: "We'll find that mother was … in a civil commit- ment and thus unable to successfully care for her child with no viable option." (Tr. at 25.)

returned, the trial court had little choice but to declare T.S. a CHINS and continue his placement in foster care.

■ Mother also claims the CHINS finding is supported by insufficient evidence because the only evidence suggesting Grandmother is unfit to care for T.S. is "allegations of prior CPS involvement. These allegations are not sufficient to prove CHINS based on [Grandmother] being an inappropriate placement for T.S." (Appellant's Br. at 9.)

However, nothing in the record supports Mother's allegation that Grandmother wanted or would accept custody of T.S. Grandmother was present at the initial hearing on June 15, 2007, but when the court asked whether anyone had "comments as to placement or visitation," (Tr. at 5), neither Mother nor Grandmother requested T.S. be moved from foster care to Grandmother. At the July 13, 2007, pretrial hearing, Mother alleged she had hired a firm to find an adoptive placement for T.S., but the record contains no indication Grandmother took any steps toward adoption. Mother's testimony two weeks later at the CHINS hearing was that Grandmother was not present because "she's given up." (*Id.* at 22.) In light of these facts, the court had no apparent basis for finding Grandmother would be a viable placement alternative obviating a CHINS determination.

Because the trial court had no option but to declare T.S. a CHINS, we affirm that determination.

Affirmed.

RILEY, J., and KIRSCH, J., concur.