**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DEBORAH K. SMITH**
Sugar Creek Law
Thorntown, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF: J.J., F.J., J.O., & C.O., Minor Children, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| M.O., Mother, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 06A01-1310-JC-479 |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE BOONE CIRCUIT COURT
The Honorable J. Jeffrey Edens, Judge
The Honorable Sally E. Berish, Magistrate

**May 21, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

### Case Summary

M.O. ("Mother") appeals the determination that her children, J.J., F.J., J.O., and C.O., are children in need of services ("CHINS"). We affirm.

### Issues

Mother raises two issues, which we reorder and restate as:

    I.      whether the trial court properly admitted a case worker's testimony about what two of the children told her; and

    II.    whether there is sufficient evidence to support the CHINS adjudication.

### Facts[1]

On June 27, 2013, Mother was traveling from her home in North Carolina with her four children to visit her father ("Grandfather") in Chicago. While traveling in a construction zone on I-65 in Boone County, Trooper Evan Joyner of the Indiana State Police initiated a traffic stop because Mother was speeding and not staying in her lane. Trooper Joyner observed several prescription pill bottles in the car and noticed that

---

[1] J.J. and F.J.'s father did not participate in the CHINS proceedings. J.O. and C.O.'s father did participate in the CHINS proceedings but does not appeal the CHINS adjudication.

Mother seemed disoriented. Mother gave Trooper Joyner the pill bottles, and Trooper Joyner requested the assistance of Officer Ben Phelps, a drug recognition expert with the Lebanon Police Department. Officer Phelps conducted a twelve-step process to determine if Mother was impaired. Mother told Officer Phelps that she had been prescribed Tramadol, Clonazepam, Lamotrigine, and Dexilant and that she had taken Tramadol and Dexilant that morning and Lamotrigine the night before. Mother also admitted to smoking marijuana or K2 spice the previous night before she left North Carolina. Mother failed several field sobriety tests, and Officer Phelps concluded that Mother was under the influence of "a central nervous system depressant and cannabis" and was not able to safely operate a motor vehicle. Tr. p. 2.

Mother was charged with four counts of operating a motor vehicle while intoxicated endangering a passenger less than eighteen, one count of operating while intoxicated endangering a person, one count of speeding in a work zone with workers present, and one count of failure to signal for a turn or lane change. Mother called Grandfather in Chicago to pick up the children, who were in good physical and mental health, and he arrived in Lebanon at 3:00 a.m. In the meantime, the Department of Child Services ("DCS") learned that Mother had a history with the North Carolina Division of Social Services involving marijuana and the conditions of the home within the past three years. DCS placed the children in foster care in Indiana.

Mother was released from jail the next day. On July 1, 2013, DCS filed a petition alleging the children were CHINS, and a fact finding hearing was held on August 21, 2013 and August 28, 2013. At the time of the hearing, Mother was living in Chicago,

3

and Grandfather had attempted to obtain custody of the children, who remained in foster care, but the out-of-state transfer had not been approved.

On September 24, 2013, the trial court found the children to be CHINS. The trial court's order included detailed findings about the traffic stop and concluded:

> 3. DCS has proved by a preponderance of the evidence that that [sic] [J.J., F.J., J.O., and C.O.] are Children In Need of Services as defined in IC 31-34-1-1 in that their physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal or neglect of their parent, guardian or custodian to provide them with necessary food, clothing, shelter, medical care, education or supervision.
>
> 4. [J.J., F.J., J.O., and C.O.] are Children in Need of Services because Mother failed to provide the children with appropriate supervision on June 27, 2013, when she was operating a vehicle while intoxicated, arrested and incarcerated; in addition, Mother has a prior active history with the Division of Social Services in North Carolina involving marijuana use and conditions of the home of the children, such history having been within the past three (3) years.
>
> 5. The coercive intervention of the Court is necessary to ensure the children's safety and well-being during the pendency of this proceeding as the home state of the children is North Carolina, and North Carolina has requested through UCCJA that Indiana retain jurisdiction over the children through Disposition of the case; Mother is currently staying in Chicago, Illinois.

App. p. 41. Mother now appeals.

## Analysis

### *I. Admission of Evidence*

4

Mother argues that the trial court improperly allowed Jenny Jacobs, an assessor with the DCS, to testify over Mother's objection about what J.J. and F.J. told her during a June 27, 2013 interview. Mother contends Jacobs should not have been permitted to testify that J.J. said Mother had smoked marijuana the previous day. Mother also claims Jacobs should not have been allowed to testify that the children acknowledged they were on the way to visit Grandfather in Chicago.

Even if this testimony was inadmissible hearsay, any error in the admission of evidence is to be disregarded as harmless error unless it affects the substantial rights of a party. VanPatten v. State, 986 N.E.2d 255, 267 (Ind. 2013) (citing Ind. Trial Rule 61). The admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence. Id. Mother claims the admission of this testimony was not harmless because in CHINS cases trial courts often rely on "the cumulative nature of the evidence." Appellant's Br. p. 17. That is not the case here, where it was undisputed that Mother had admitted to smoking marijuana the night before she was stopped.

Specifically, Trooper Joyner testified that Mother admitted to smoking marijuana or K2 spice the previous night, and Jacobs testified that Mother told her she had smoked marijuana the previous day. Further, Jacobs testified that Mother told her she was on her way to Chicago to visit Grandfather. Thus, Jacobs's testimony about what the children told her was cumulative of other evidence, and any error in the admission of this testimony was harmless.

5

## II. Sufficiency of the Evidence[2]

A CHINS proceeding is a civil action, and the DCS is required to prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. In re K.D., 962 N.E.2d 1249, 1253 (Ind. 2012). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom, and we neither reweigh the evidence nor judge the credibility of the witnesses. Id. "We reverse only upon a showing that the decision of the trial court was clearly erroneous." Id.

The CHINS petitions were based on Indiana Code Section 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

It appears the trial court entered findings and conclusions sua sponte. "As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence

---

[2] In her summary of the argument, Mother claims that DCS lacked probable cause to file the CHINS petition and that she has combined this argument with her sufficiency argument. In the argument section of her brief, Mother focuses solely on whether there was sufficient evidence that the children were CHINS. Accordingly, we only address whether there is sufficient evidence to support the CHINS adjudication.

supports the findings, and whether the findings support the judgment." In re S.D., 2 N.E.3d 1283, 1287 (Ind. 2013). We review the remaining issues under the general judgment standard and affirm if it can be sustained on any legal theory supported by the evidence. Id.

### A. *Lack of Supervision*

Mother does not challenge the trial court's findings of fact, which support the conclusion that Mother failed to appropriately supervise the children when she was operating a vehicle while intoxicated, arrested, and incarcerated. To the extent Mother argues that this case is like Perrine v. Marion Cnty. Office of Child Servs., 866 N.E.2d 269, 276 (Ind. Ct. App. 2007), in which we concluded that a single occurrence of drug use outside of the child's presence was not sufficient to support a CHINS determination, we disagree. Mother was arrested for driving while impaired, with the children in the car. During the course of the investigation, Mother admitted to smoking marijuana the previous day while the children were in her house. It was also discovered that Mother had past involvement with the Department of Social Services in North Carolina related to marijuana use. Accordingly, Perrine is factually distinguishable, and Mother has not established that the DCS failed to prove the first statutory element.

### B. *Coercive Intervention*

Mother also relies on Perrine to challenge the trial court's conclusion that the coercive intervention of the court was necessary to ensure the children's safety and well-being during the pendency of the proceeding because of the interstate dynamics at play. In Perrine, at the time of her arrest, the mother requested permission to call her parents or

7

brother, who lived three to ten minutes away, to care for the child, and law enforcement denied that request. Also, the charges against the mother were dropped shortly after she was released from jail. Perrine, 866 N.E.2d at 277. Based on those facts, we could not say that the coercive intervention of the court was necessary to assure the child would receive the care, treatment, or rehabilitation that she needed. Id.

Here, at the time of the CHINS hearing, there was no indication that the criminal charges against Mother had been dropped or otherwise resolved, and Mother was living in Chicago. Also, although Grandfather was contacted after Mother's arrest and arrived at Boone County early the next morning, he was not immediately available to care for the children when Mother was arrested. Further complicating matters was the fact that Grandfather lived out-of-state. Despite Grandfather's desire to assume custody of the children, "red tape" had delayed that process and created a situation that the trial court described as "ridiculous."[3] Tr. p. 91. Moreover, at the CHINS hearing, the status of North Carolina's involvement in the case was unclear. See Id. at 168. For these reasons, Perrine is not on point.

---

[3] Mother challenges the DCS's initial justification for placing the children in foster care and cites Indiana Code Section 31-34-19-7, which provides in part:

> if the court enters a dispositional decree regarding a child in need of services that includes an out-of-home placement, the court shall consider whether the child should be placed with the child's suitable and willing blood or adoptive relative caretaker, including a grandparent, an aunt, an uncle, or an adult sibling, before considering other out-of-home placements for the child.

This code section applies to an out-of-home placement in a CHINS dispositional decree. It is not clear how this statute relates to the multi-jurisdiction issues at play here. Without more, Mother has not established that this statute required the children to be placed with Grandfather in Chicago immediately following her arrest.

8

Given the interstate dynamics at play, we conclude that the evidence supports the conclusion that coercive intervention of the court was necessary to ensure the children's safety and well-being during the pendency of this proceeding. In other words, the children need care that they are not receiving and are unlikely to be provided without the coercive intervention of the court.

## Conclusion

Any error in the admission of Jacobs's testimony was harmless. There is sufficient evidence to support the CHINS adjudication. We affirm.

Affirmed.

BAKER, J., and CRONE, J., concur.