## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Thomas G. Krochta
Vanderburgh County Public
Defender's Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF:

A.G., N.G., and S.G.,
Children in Need of Services,

C.G.,

*Appellant-Respondent,*

v.

Indiana Department of Child
Services,

*Appellee-Petitioner.*

June 10, 2016

Court of Appeals Case No.
82A01-1511-JC-2068

Appeal from the Vanderburgh
Superior Court

The Honorable Brett J., Niemeier,
Judge

The Honorable Renee A.
Ferguson, Magistrate

Trial Court Cause Nos.
82D04-1506-JC-1014,
82D04-1506-JC-1015, and
82D04-1506-JC-1016

**Najam, Judge.**

## Statement of the Case

C.G. ("Father") appeals the juvenile court's determination that his minor children, A.G., N.G., and S.G. ("the Children"), are Children in Need of Services ("CHINS"). Father presents a single issue for our review, namely, whether the court erred when it determined the Children to be CHINS. We affirm.

## Facts and Procedural History

On June 9, 2015, the Indiana Department of Child Services ("DCS") received a report of drug use and domestic violence in the Children's home. As part of its ensuing investigation, DCS had Father take a drug test. Father tested positive for cocaine and marijuana use. Thereafter, Father gave numerous conflicting stories about his drug use.

Father cared for the Children in the home of R.M., the Children's mother ("Mother"),[1] while she worked and, the week before DCS began its investigation, Father was at the home "[o]ff and on." Tr. at 53. In January of 2015, Mother and Father had an argument in Mother's home while the Children were present. Father was "screaming" and "throwing stuff around," which made Mother feel "[s]cared." *Id.* at 32, 59. Mother also had a protective

---

[1] Mother did not object to the CHINS proceedings and does not partake in this appeal.

order against Father. According to Mother, she obtained the protective order "[b]ecause [Father] was harassing me and threatening to come over all the time"; Father "would message me or if I didn't answer the phone he would call me and he would tell me he was gonna come to the house and nobody could stop him"; Father "said he would come to the house, he would put me in the hospital. He said he would just do a whole bunch of stuff. He said he'd break everything in the house." *Id.* at 55. Mother was scared of Father and believed him when he made these threats.

[4] Following DCS's intervention, Mother agreed to a safety plan to keep the Children safe from Father and to prevent him from entering the home. The juvenile court further ordered Father to stay out of Mother's home. Thereafter, Father lived with his grandmother. During DCS's involvement, DCS offered Father supervised visitation with the Children three times a week, but Father only attended one visit each week.

[5] On November 17, the juvenile court held a dispositional hearing, at which Mother and Father testified. Mother testified that she believed the coercive intervention of the court to be necessary to prevent Father from harassing and threatening her. Father testified that Mother and her family, who had become more involved in the care of the Children following DCS's involvement, used drugs and neglected the Children.

[6] Following the dispositional hearing, the court adjudicated the Children to be CHINS. Among other things, the court ordered Father to participate in

domestic violence therapy and substance abuse treatment programs. This appeal ensued.

## Discussion and Decision

[7] Father appeals the juvenile court's determination that the Children are CHINS. Where, as here, a juvenile court enters findings of fact and conclusions of law in support of its CHINS determination, we apply a two-tiered standard of review. *Parmeter v. Cass Cnty. Dep't of Child Servs.*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007). First, we consider whether the evidence supports the findings and, second, whether the findings support the judgment. *Id.* We will not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* While we defer to the juvenile court's findings of fact, we do not do so as to its conclusions of law. *Id.* Additionally, we will not reweigh the evidence; rather, we consider the evidence favorable to the judgment and draw all reasonable inferences in favor of the judgment. *Id.*

[8] "Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that [the Children are] CHINS as defined by the juvenile code." *N.L. v. Ind. Dep't of Child Servs. (In re N.E.)*, 919 N.E.2d 102, 105 (Ind. 2010). In reviewing the sufficiency of the evidence supporting a CHINS determination, we consider only the evidence most favorable to the judgment

and the reasonable inferences flowing therefrom. *A.C. v. Hamilton Cty. Dep't of Child Servs. (In re J.L.)*, 919 N.E.2d 561, 563 (Ind. Ct. App. 2009).

[9] To support a CHINS adjudication, DCS must prove three elements by a preponderance of the evidence: (1) that the Children are under eighteen years of age, (2) that at least one of eleven different statutory circumstances exist that would make the Children CHINS,[2] and (3) that the Children need care, treatment, or rehabilitation that they are not receiving and are unlikely to be provided or accepted without the coercive intervention of the court. *S.S. v. Ind. Dep't of Child Servs. (In re K.D.)*, 962 N.E.2d 1249, 1253 (Ind. 2012). Here, the juvenile court found the Children to be CHINS pursuant to Indiana Code Section 31-34-1-1 (2015), which states that a child is a CHINS if the child's "physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent . . . to supply the child with necessary food, clothing, shelter, medical care, education or supervision"; and the child needs care, treatment, or rehabilitation that the child is not receiving and is unlikely to be provided without the coercive intervention of the court.

[10] Father's arguments on appeal do not clearly delineate between the separate statutory requirements. Rather, it appears that Father's argument on appeal is that DCS failed to demonstrate any of the statutory elements for two reasons.

---

[2] These circumstances are codified at Indiana Code Sections 31-34-1-1 to -11.

First, Father asserts that certain findings of the juvenile court in its CHINS order are not supported by the evidence. Second, Father asserts that, at best, the evidence showed he only used cocaine one time. We address each argument in turn.

We first consider Father's challenge to four findings of the juvenile court in its CHINS order. In particular, Father challenges paragraphs 36, 38, 42, and 43, which state as follows:

> 36. Although [F]ather repeatedly emphasized his willingness to cooperate with DCS during his testimony, [F]ather has demonstrated an unwillingness to disclose truthful information, evidenced by multiple inconsistent statements, including statements about his drug use and residence.
>
> * * *
>
> 38. [F]ather admitted that his cocaine and marijuana use was "not appropriate," but [he] denied that his substance abuse was harmful to [the C]hildren, relying on his earlier testimony that he was outside of the home for a full week prior to his drug test and that he used cocaine only one (1) time, which is contradicted by his earlier admissions.
>
> * * *
>
> 42. Assessment FCM [(Family Case Manager)] and On-going FCM expressed concern that [F]ather's drug use, instability, and inconsistency in complying with temporary services are harming the [C]hildren. The Court finds that [F]ather's pattern of instability negatively affects the [C]hildren's development and emotional health.

43.     Throughout the pendency of the cases, [F]ather has engaged in a pattern of behavior which indicates that he is unable to provide care for the [C]hildren, provide a safe and stable environment, and ensure that the [C]hildren receive appropriate supervision. Furthermore, [F]ather's inconsistent and contradictory statements and failure to participate in temporary services, despite access to services through DCS, demonstrate that less restrictive means have failed to ensure the safety of the [C]hildren.

Appellant's App. at 30-31. DCS concedes on appeal that, insofar as paragraph 38 can be read to say that Father contradicted himself with respect to the number of times he ingested cocaine, that reading is not supported by the evidence.

[12] We have reviewed the record and affirm those findings. With respect to paragraphs 36 and 38, the record is clear that Father repeatedly changed his story with respect to his cocaine use. And although Father consistently stated that he had used cocaine one time, his contradictions elsewhere with respect to that use permitted the juvenile court to find him not credible.

[13] With respect to paragraph 42, Father asserts that the DCS's witnesses did not testify that Father's behavior was actively harming the Children. But Father misconstrues this finding. The court stated, accurately, that DCS's witnesses "expressed concern" about Father's behavior. Appellant's App. at 30; *see* Tr. at 73-76. Moreover, the juvenile court is permitted to reach reasonable inferences from the evidence and need not wait until a child is actually harmed to

intervene. *E.g.*, *N.P. v. Ind. Dep't of Child Servs. (In re R.P.)*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011).

[14]     Father also asserts that paragraph 43 is clearly erroneous because he was denied the opportunity to provide the Children with appropriate care due to the safety plan. But Father ignores the reason the safety plan was put into place. He also ignores the ample evidence of his behavior following DCS's involvement. We reject this argument.

[15]     We also briefly consider Father's argument that his one-time use of cocaine is not sufficient to support the CHINS adjudication. Father asserts that his case is analogous to the facts in *Perrine v. Marion County Office of Child Services*, 866 N.E.2d 269, 277 (Ind. Ct. App. 2007), in which we held that a parent's one-time drug use outside the presence of her child and without more was not sufficient to support a CHINS adjudication. But *Perrine* is inapposite. Father used cocaine along with marijuana, and the use of multiple drugs on different occasions is not a one-time use. Further, although Father repeatedly changed his story as to when he ingested the cocaine that led to the failed drug test, according to his testimony at the dispositional hearing it was about three days before DCS began its investigation. And Mother testified that, at that time, Father was providing care for the Children "[o]ff and on." Tr. at 53. Accordingly, the evidence most favorable to the trial court's judgment reasonably puts Father's cocaine use at a time in which he was providing care for the Children. And, in any event, unlike the facts in *Perrine*, Father has a

violent relationship with Mother, and Mother obtained a protective order against him.

[16] In sum, we reject Father's challenge to the trial court's findings and his reliance on *Perrine*. Father's arguments on appeal amount to requests for this court to reweigh the evidence, which we cannot do. Moreover, in addition to those findings challenged by Father, which we have addressed, the trial court made numerous unchallenged findings, which when considered in the aggregate also support the CHINS determination. *See, e.g.*, *Karma W. v. Marion Cty. Dep't of Child Servs. (In re B.J.)*, 879 N.E.2d 7, 20 (Ind. Ct. App. 2008) (holding that an erroneous finding is "merely harmless surplusage" when unchallenged findings "provide ample support for the trial court's ultimate conclusion"), *trans. denied*. We affirm the juvenile court's adjudication of the Children as CHINS.

[17] Affirmed.

Robb, J., and Crone, J., concur.