## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 03 2017, 6:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

S.E.,
*Appellant-Defendant,*

v.

Indiana Department of Child Services,

*Appellee-Plaintiff*

August 3, 2017

Court of Appeals Case No.
84A01-1702-JC-358

Appeal from the Vigo Circuit Court

The Honorable Sarah K. Mullican, Judge

Trial Court Cause No.
84C01-1607-JC-824, 84C01-1607-JC-825

**Altice, Judge.**

## Case Summary

[1] S.E. (Mother) appeals from the trial court's order adjudicating her children to be Children in Need of Services (CHINS). On appeal, Mother argues that the trial court's order is not supported by sufficient evidence.

[2] We affirm.

## Facts & Procedural History

[3] Mother has two sons, B.E., born in January 2007, and A.M., born in September 2012 (collectively, the Children).[1] The family first came to the attention of the Department of Child Services (DCS) in November 2014, after law enforcement found B.E. locked outside the home for approximately forty minutes in twenty-degree weather. When Mother came home, it appeared to the Family Case Manager (FCM) that Mother was under the influence, and there were human feces found inside the home. The Children were removed from Mother's care at that time, but eventually returned and the case was closed successfully in April 2015.

[4] In April 2016, FCM Melissa Eldred went to Mother's brother's home to conduct an unrelated investigation concerning his children. When she arrived, FCM Eldred could smell a very strong odor of marijuana from the sidewalk in front of the house, and the smell intensified as she approached the house. When FCM Eldred knocked on the door, she saw A.M. pull back the curtain.

---

[1] The Children's fathers are not actively involved in their lives and they have not participated in the DCS assessment or this appeal.

The residents of the home then answered the door, and while FCM Eldred was talking to them, Mother and A.M. left through the back door. The individuals present at the home refused to identify Mother, but FCM Eldred finally learned Mother's identity approximately a month later. On May 19, 2016, FCM Eldred generated a report and an investigation began.

[5] The next day, FCM Eldred made an unannounced visit to Mother's home, during which Mother admitted to using methamphetamine a couple of days earlier. Mother submitted to a drug screen and tested positive for amphetamine, methamphetamine, and THC. Prior to the filing of the CHINS petitions, Mother was referred for a substance abuse assessment, random drug screens, and home-based case management. Mother made an appointment for her substance abuse assessment, but did not show up and did not reschedule, stating that she would not comply with services until court ordered to do so. Mother did submit to a number of drug screens, and she tested positive for illegal drugs numerous times. Specifically, she tested positive for THC six more times and amphetamine and methamphetamine two more times. Mother's last positive drug screen was August 1, 2016; after that, she refused to submit to any more drug screens. Mother's participation in home-based case management was limited and sporadic, with the majority of Mother's participation occurring in the weeks preceding the CHINS fact-finding hearing.

[6] During this time, DCS also learned that B.E. had missed eleven days of school and been tardy fourteen times. Mother told FCM Abigail Tracy that the reasons for B.E.'s absences were "not DCS's business." *Fact Finding Hearing*

*Transcript* at 25. Additionally, on several occasions, Mother needed monetary assistance to pay her utility bills in order to avoid being evicted.

[7] DCS filed petitions alleging that the Children were CHINS on July 29, 2016. The Children remained in Mother's care, and a fact-finding hearing was held on December 12, 2016. On December 30, 2016, the trial court issued its order adjudicating the Children CHINS. After a dispositional hearing was held but prior to the entry of a written dispositional order, DCS filed a petition to modify in which it sought the Children's removal from Mother's care due to her continued refusal to submit to drug screens as ordered. The trial court held a hearing on the petition to modify on January 6, 2017, at which Mother failed to appear. On January 17, 2016, the court issued an order granting the petition to modify and authorizing the Children's continued placement in foster care. On January 23, 2017, the court entered its dispositional decree ordering Mother to participate in services. Mother now appeals.

## Discussion & Decision

[8] Mother argues that the trial court's CHINS finding was not supported by sufficient evidence. Where, as here, a trial court enters findings of fact and conclusions of law in support of its CHINS determination, we apply a two-tiered standard of review. *Parmeter v. Cass Cnty. Dep't of Child Servs.*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will not set aside the findings or judgment unless they are clearly

erroneous. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* While we defer to the trial court's findings of fact, we do not do so as to its conclusions of law. *Id.* Additionally, we will not reweigh the evidence; rather, we consider the evidence favorable to the judgment and draw all reasonable inferences in favor of the judgment. *Id.*

[9]     "Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). In reviewing the sufficiency of the evidence supporting a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *In re J.L.*, 919 N.E.2d 561, 563 (Ind. Ct. App. 2009).

[10]    In this case, DCS alleged that the Children were CHINS pursuant to Ind. Code § 31-34-1-1, which provides that a child under the age of eighteen is a CHINS under the following circumstances:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[11] On appeal, Mother argues that in the absence of evidence that her methamphetamine use occurred in the Children's presence, her three positive tests for methamphetamine are insufficient to support a CHINS adjudication. In support of her argument, Mother cites *Perrine v. Marion Cnty. Office of Child Servs.*, 866 N.E.2d 269, 276 (Ind. Ct. App. 2007), in which this court found that a mother's single admitted use of methamphetamine outside her child's presence was insufficient to support a CHINS finding.

[12] The facts of this case are readily distinguishable. This case began because A.M. was present with Mother inside a home that smelled strongly of marijuana—in other words, there was evidence that Mother exposed A.M. to illegal drug use. Moreover, in the span of less than three months, Mother tested positive for amphetamine and methamphetamine three times and THC seven times, and she then refused to submit to any more drug screens. Additionally, Mother had a previous DCS case in November 2014, she was unemployed and consistently needed assistance with paying her utility bills in order to avoid eviction, and B.E. had missed eleven days of school and been tardy fourteen times. This evidence was sufficient to support a finding that the Children's mental or physical conditions were seriously endangered as a result of Mother's untreated substance abuse problems, her difficulty maintaining suitable housing, and her failure to ensure that B.E. attended school.

[13] We note further that Mother refused to engage in services and submit to drug screens voluntarily, and she stated that she would not comply with services until ordered to do so. This evidence is sufficient to support the trial court's finding that the Children needed care, treatment, or rehabilitation that they were not receiving and was unlikely to be provided or accepted without the coercive intervention of the court. In sum, DCS presented sufficient evidence to support the trial court's CHINS findings.

[14] Judgment affirmed.

[15] Baker, J. and Bailey, J., concur.