# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 03 2019, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT F.M.

Nicholas A. Adams
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of N.M. (Minor Child)

and

F.M. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

July 3, 2019

Court of Appeals Case No. 18A-JT-2549

Appeal from the Allen Superior Court

The Honorable Sherry Hartzler, Judge *Pro Tempore*

Trial Court Cause No. 02D08-1609-JT-203

**Bradford, Judge.**

# Case Summary

[1]     F.M. ("Father") is the biological father of N.M.[1] In December of 2014, N.M. was adjudicated to be a child in need of services ("CHINS") due to dirty housing, lack of supervision, and Father's inability to care or supervise N.M. due to incarceration. In September of 2016, the Department of Child Services ("DCS") petitioned for the termination of Father's parental rights after Father was consistently incarcerated. In December of 2018, the juvenile court ordered that Father's parental rights to N.M. be terminated. Father contends that the juvenile court's termination of his parental rights was clearly erroneous. Because we disagree, we affirm.

# Facts and Procedural History

[2]     Father is a biological parent of N.M. (born July 10, 2011). On December 29, 2014, the juvenile court found N.M. to be a CHINS after admissions of dirty housing conditions, lack of supervision, and Father's inability to care or supervise N.M. due to incarceration.[2] Prior to N.M.'s CHINS adjudication, in June of 2014, Father was sentenced to three years of incarceration after being convicted of Class D felony receiving stolen property and five years of

---

[1] Mother does not appeal the termination of her parental rights.

[2] Prior to her removal and CHINS adjudication, N.M. was living with her Mother.

incarceration with one year suspended to probation after being convicted of Class D felony criminal trespass and found to be a habitual offender. As part of his Parent Participation Plan ("PPP"), the juvenile court ordered Father to, *inter alia*, refrain from criminal activity; obey the terms of his parole and probation; cooperate with and maintain contact with DCS, the Guardian *ad Litem* ("GAL"), or court-appointed special advocate ("CASA"); provide the family case manager ("FCM") with accurate personal/contact information; maintain suitable housing and employment; enroll in anger management counseling at Quality Counseling; complete a diagnostic assessment and psychological evaluation; and submit to random drug screens and refrain from using illegal substances.

[3]     In October of 2015, Father was placed in community corrections. In December of 2015, Father attempted to start therapy at Quality Counseling; however, the director did not allow him to participate after his aggressive behavior caused her to have safety concerns for the staff. That same month, the State alleged that Father had violated the terms of his probation after testing positive for cocaine. In January of 2016, Father admitted to the allegation and the court revoked one year of his previously-suspended sentence. In September of 2016, DCS petitioned for the termination of Father's parental rights. In November of 2016, Father pled guilty to Level 6 felony resisting law enforcement and was sentenced to 270 days of incarceration. In April of 2017, Father was released from incarceration and contacted DCS. FCM Melisa Casteel attempted to contact Father but the telephone number he gave DCS was a nonworking

number. Other attempts to locate Father through his last known address, social media, and Father's associates were likewise unsuccessful. In August of 2017, Father was again incarcerated.

[4] In October of 2017, Father pled guilty to Level 6 felony resisting law enforcement and was sentenced to two years on probation. Upon his release from jail, Father attempted to contact FCM Casteel but did not leave his contact information. FCM Casteel's subsequent attempts to locate Father through his probation officer were unsuccessful, and his whereabouts were unknown. In December of 2017, Father was placed in Park Center for rehabilitation. Father, however, was incarcerated later that month after being terminated from Park Center for what he describes as "allegedly running drugs in and out of rehab ah possession of ah paraphernalia stuff." Tr. Vol. III p. 129. The juvenile court held a series of evidentiary hearings on the termination petition on October 25, 2017, March 27, 2018, and June 27, 2018. On December 24, 2018, the juvenile court ordered that Father's parental rights be terminated.

# Discussion and Decision

[5] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The parent–child relationship is "one of the most valued relationships in our culture." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 286 (Ind.

2003) (internal citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities their rights may be terminated. *Id.*

[6]  In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment." *Id.*

[7]  Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.

[and]

(C) that termination is in the best interests of the child;

[and]

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).[3] In challenging the sufficiency of the evidence to sustain the termination of his parental rights, Father contends that the juvenile court erred by concluding that (1) the conditions that resulted in the removal of N.M. would not be remedied, (2) the continuation of the parent–child relationship posed a threat to N.M.'s well-being, (3) termination of his parental

---

[3] It is not disputed that N.M. had been removed from Father for at least six months under a dispositional decree, a required finding pursuant to Indiana Code section 31-35-2-4(b)(2).

rights was in the N.M.'s best interests, and (4) there was a satisfactory plan for the care and treatment of N.M.

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

[8] Father contends that there is insufficient evidence to establish a reasonable probability that the conditions that resulted in N.M.'s removal would not be remedied or that the continued parent–child relationship posed a threat to N.M. Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS was only required to establish one of the circumstances. We choose to first address Father's contention that the juvenile court erred by concluding that the conditions which resulted in N.M.'s removal would not be remedied.

> In determining whether the conditions that resulted in the child[ren]'s removal…will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (internal citations, quotations, and footnote omitted, first and third set of brackets in original, second set added).

[9] The conditions that led to N.M.'s removal were dirty housing conditions, lack of supervision by Mother, and Father's inability to care or supervise N.M. due to incarceration. DCS produced ample evidence to establish a reasonable probability that these conditions would not be remedied. During these four-year proceedings, Father has been incarcerated for all but approximately five months. The record indicates that Father committed two felony offenses, violated the terms of his probation, and was dismissed from a rehabilitation center for allegedly peddling illegal substances. Father's life of crime demonstrates that he is unwilling to care for or provide supervision for N.M., much less refrain from being incarcerated. Given Father's consistent pattern of incarceration, the juvenile court did not abuse its discretion by concluding that the conditions that led to N.M.'s removal would not be remedied. Therefore, it is unnecessary for us to address Father's contention that there was insufficient evidence to conclude that the continued parent–child relationship posed a threat to N.M.

[10] Father seemingly argues that the "overwhelming" PPP, lack of communication by FCM Casteel, and FCM Casteel's alleged bias "created a situation where [Father] was prevented from having a meaningful opportunity to father his child." Appellant's Br. p. 22. Father's argument is merely an invitation for us to reweigh the evidence and judge witness credibility, which we will not do.

*Perrine v. Marion Cty. Office of Child Services,* 866 N.E.2d 269, 273–74 (Ind. Ct. App. 2007). Moreover, the record indicates that FCM Casteel made numerous attempts through multiple sources to communicate with Father but was unable to because Father failed to provide adequate contact information. FCM Casteel also testified that she was willing to stagger the services required in the PPP to prevent Father from having to start all fifteen at once. The only person Father has to blame for creating a situation where he was prevented from being able to parent N.M. is himself.

## II. Indiana Code Section 31-35-2-4(b)(2)(C)

[11] Father contends that there is insufficient evidence to support the juvenile court's conclusion that termination of his parental rights was in N.M.'s best interests. We are mindful that, in determining what is in the best interests of the child, the juvenile court must look beyond factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). We have previously held that recommendations from the FCM and CASA to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is sufficient evidence to show that termination is in the child's best interests. *In re J.S.*, 906 N.E.2d at 236.

[12] FCM Casteel and GAL Michael Harmeyer both testified that termination of Father's parental rights was in N.M.'s best interests. While coupling that testimony with our previous conclusion that there was sufficient evidence to show that the conditions of removal would not be remedied is sufficient to support the juvenile court's termination of Father's parental rights, it is not as though this testimony is unsupported by other evidence in the record.

[13] The record indicates that Father has not had any contact with N.M. since November of 2014 and that N.M. does not have a relationship with Father. FCM Casteel testified that N.M. is "doing really well" in her foster placement. Tr. Vol. II p. 235. FCM Casteel also noted that N.M. is doing well in school, attending therapy, and "very attached to her foster parents." *Id.* at 236. Moreover, the record indicates that Father has anger issues and has failed to comply with the juvenile court's order to participate in services to manage said issues. Throughout these entire proceedings, Father has not been permitted to visit the DCS office due to a restraining order that was issued after he threatened an FCM and the foster parents. FCM Casteel recalled a conversation with Father in which

> [Father] um began telling me that um I need to give him back his daughter or I was going to have a bad time um and um you and you know the foster parents were going to have a bad time and he knew how to find us um and eventually I ended conversation um because [Father] just continued to threaten me[.] I explained to him that if did not stop I was going to have to end the conversation[.] [H]e continued [and] I ended the conversation.

Tr. Vol. III pp. 73–74. Father has not established that the juvenile court's determination that termination was in N.M.'s best interests was clearly erroneous.

## II. Indiana Code Section 31-35-2-4(b)(2)(D)

[14]     Father contends that the juvenile court erred by concluding that adoption was a satisfactory plan for the care and treatment of N.M. A satisfactory plan need not be detailed but, rather, offer a general sense of the direction in which the child will be going after the parent–child relationship is terminated. *In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). Here, the plan was for N.M. to be adopted, which is sufficient evidence to support the juvenile court's conclusion. *See In re Termination of Parent-Child Relationship of D.D.*, 804 N.E.2d 258, 268, (Ind. Ct. App. 2004) (concluding that the plan for the child to be adopted by either the current foster family or another family was a suitable plan for the child's future), *trans. denied*.

[15]     The judgment of the juvenile court is affirmed.

Crone, J., and Tavitas, J., concur.