## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 30 2020, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ryan D. Bower
Bower Law Office, LLC
Salem, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Matter of V.R. (Minor Child), | July 30, 2020 |
| R.C. (Mother), | Court of Appeals Case No. 20A-JC-450 |
| *Appellant-Respondent,* | Appeal from the Orange Circuit Court |
| v. | The Honorable Steven L. Owen, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 59C01-1911-JC-246 |
| *Appellee-Petitioner.* | |

**Mathias, Judge.**

[1] R.C. ("Mother") appeals the Orange Circuit Court's order adjudicating her minor child a Child In Need of Services ("CHINS"). Mother raises three issues, which we restate as the following two:

    I.  Whether the trial court abused its discretion when it allowed a toxicologist's telephonic testimony; and,

    II.  Whether the Department of Child Services ("DCS") proved that V.R. was a CHINS by a preponderance of the evidence.

[2] We affirm.

## Facts and Procedural History

[3] Mother has one child, V.R., who was born on August 10, 2008.[1] V.R. suffers from a heart condition. V.R.'s maternal grandmother provides medical care to her.

[4] On November 25, 2019, the DCS received a report that Mother was using illegal substances and not maintaining her mental health. Two family case managers went to Mother's home to investigate. They spoke to Mother and her roommate. V.R. was at her grandmother's house.

[5] Mother initially agreed to submit to a drug screen and admitted that the screen would be positive for methamphetamine. Tr. p. 64. Mother told family case manager ("FCM") Rebecca Nail ("Nail") that she sprayed hairspray on methamphetamine "to oxidize it or to remove the chemicals so she could sleep

---

[1] The child's father, H.R., is incarcerated, and his release date is May 24, 2023. Tr. p. 48.

at night." Tr. p. 17; *see also* Tr. p. 62. Mother admitted that she heard voices in her head. Tr. pp. 18, 65. She was agitated and could not speak in clear and concise sentences.

[6] Dalton Nigg ("Nigg"), the second family case manager, learned that V.R. was safe at her grandmother's home but was expected to return to Mother's home the next day. Nigg returned to Mother's home on November 26, 2019. When he arrived at approximately 11:40 a.m., Mother was still in bed. Mother was agitated and "somewhat scattered." Tr. p. 12. Mother's roommate reported that Mother was hearing voices and made statements about "sacrificing" V.R. or her roommate. Tr. p. 13. Mother denied making the statements. V.R. was removed from Mother's home and placed in relative care.

[7] The same day, DCS filed a petition alleging that V.R. was a CHINS pursuant to Indiana Code section 31-34-1-1. DCS alleged that V.R. was a victim of neglect due to Mother's methamphetamine use and her untreated mental illness. Mother was no longer taking her prescribed medications for her mental illness and was not participating in therapy. In 2016, V.R. had previously been adjudicated a CHINS because of Mother's methamphetamine use and mental instability.

[8] After an initial hearing held on November 27, 2019, the trial court ordered V.R. to be placed with relatives. At a family team meeting on December 17, 2019, Mother admitted to using methamphetamine. Tr. p. 102. FCM Nigg recommended a substance abuse evaluation. He recommended that V.R.

should not be returned to Mother's care until she completed substance abuse treatment. Tr. p. 103. Mother was also hospitalized for her mental illness for approximately two weeks in December 2019, after V.R. was removed from her care. After her release from the hospital, she continued to participate in treatment once a month with a psychiatrist and a counselor. Tr. p. 54. Mother is also taking prescribed medications to treat her mental health issues.

[9] On January 15, 2020, the trial court held the CHINS fact-finding hearing. Mother testified that she suffers from schizophrenia. Tr. p. 53. When DCS began to question Mother about her substance abuse issues, Mother responded, "if we are going to focus on mental illness we can focus on that. Substance use is not an issue with me, nor has it been and if we need to, to not talk about that then I'm not going to answer." Tr. p. 56.

[10] FCM Nail testified that DCS received a report concerning Mother's substance abuse, and that Mother had stood over her roommate and V.R. while holding a knife stating "the voices were telling her to do bad things." Tr. p. 61. Nail testified that Mother appeared to be "[m]entally unstable" during Nail's November 25, 2019, visit to Mother's home. Tr. p. 62. Mother told Nail that people thought she "was crazy because she dressed up and carried a butcher knife around the house[.]" Tr. p. 63. Nail did not believe that V.R. should be returned to Mother's care. Nail felt that Mother's mental health was unstable, and that she needed to address her substance abuse issues. Tr. p. 66.

[11] The trial court allowed toxicologist, Dr. Donna Coy, to testify telephonically over Mother's objection. Dr. Coy testified that Mother's drug screens submitted on November 26, 2019, and December 11, 2019, were both positive for amphetamine and methamphetamine. Tr. p. 93.

[12] After considering Mother's mental health issues and substance abuse, the trial court concluded that V.R. was CHINS. Tr. pp. 127–29. Two weeks later, the trial court held the disposition hearing and issued its dispositional order. Mother was ordered to participate in visitation with V.R., maintain contact with DCS, participate in services recommended by DCS, complete a parenting assessment and a psychological evaluation, take all prescribed medications, submit to random drug screens, and complete a substance abuse assessment. Mother now appeals the CHINS adjudication.

## I. Telephonic Testimony

[13] Mother argues that the trial court abused its discretion when it allowed a toxicology witness, Dr. Coy, to testify telephonically at the fact-finding hearing. DCS contends that, if the testimony was admitted in error, the error was harmless.

[14] The admission of evidence is entrusted to the sound discretion of the trial court. *In re B.H.*, 989 N.E.2d 355, 360 (Ind. Ct. App. 2013). We will find an abuse of discretion only where the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.* But not all error is reversible. *Id.* The improper admission of evidence is harmless error when the judgment is

supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment. *Id.*

[15]     Administrative Rule 14(B) provides guidelines for the admission of telephonic testimony in a CHINS fact-finding hearing. A motion for telephonic testimony must be served not less than thirty days before the date specified for the fact-finding hearing. Admin. R. 14(B). DCS admits that its motion was filed only twenty-six days before the scheduled fact-finding hearing. Appellee's Br. at 22. The trial court's order granting DCS's motion to present telephonic testimony also did not include specific findings as required by Administrative Rule 14(B).

[16]     Therefore, the trial court abused its discretion when it admitted Dr. Coy's telephonic testimony without meeting the requirements of Administrative Rule 14(B). DCS argues that the error is harmless because Dr. Coy's testimony concerning the test results of Mother's drug screens was cumulative of other properly admitted testimony.

[17]     Dr. Coy testified that Mother's November 26 and December 11, 2019, drug screens were positive for amphetamine and methamphetamine. Tr. p. 93. FCM Nail testified Mother admitted to methamphetamine use during the initial investigation in November 2019. Tr. pp. 62, 68. Mother told the case manager that she would test positive for methamphetamine. She also told Nail that she sprayed hairspray on methamphetamine before ingesting it. Tr. p. 62. She indicated that her methamphetamine use did affect her ability to parent V.R.

Tr. p. 62. At a team meeting on December 17, 2019, Mother told FCM Nigg that she had used methamphetamine recently. Tr. p. 102.

[18] Error in the admission of evidence is harmless "if the erroneously admitted evidence was cumulative of other evidence appropriately admitted." *In re S.W.*, 920 N.E.2d 783, 788 (Ind. Ct. App. 2010). Dr. Coy's testimony concerning Mother's drug screen results was cumulative of Mother's admissions to the family case managers that she used methamphetamine in November and December 2019. For this reason, the trial court did not commit reversible error when it allowed Dr. Coy's telephonic testimony.

## II. Sufficient Evidence

[19] Mother argues that DCS failed to prove that V.R. was endangered or that the coercive intervention of the court was necessary. It is well-settled that

> [i]n all CHINS proceedings, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. When reviewing a CHINS adjudication, we do not reweigh evidence or judge witness credibility and will reverse a determination only if the decision was clearly erroneous. A decision is clearly erroneous if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts.

*V.B. v. Ind. Dep't of Child Servs.*, 124 N.E.3d 1201, 1208 (Ind. 2019) (citations and quotation marks omitted).

[20]     DCS alleged that V.R. was a CHINS pursuant to Indiana Code section 31-34-1-1, which provides that a child under the age of eighteen is a CHINS under the following circumstances:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision;
>
>> (A) when the parent, guardian, or custodian is financially able to do so; or
>>
>> (B) due to the failure, refusal or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[21]     "That final element guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the ability to provide for their children,' not merely where they 'encounter difficulty in meeting a child's needs.'" *J.B. v. Ind. Dep't of Child Servs.*, 2 N.E.3d 1283, 1287 (Ind. 2014) (quoting *Lake Cty. Div. of Fam. & Child. Servs. v. Charlton*, 631 N.E.2d 526, 528 (Ind. Ct. App. 1994)). When considering this requirement, "courts should consider the family's condition not just when the case was filed, but also when it is heard." *Gr.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574, 580 (Ind. 2017)

(quotations omitted). "Doing so avoids punishing parents for past mistakes when they have already corrected them." *Id*. at 581.

[22] Mother argues that V.R. was never endangered because she "was not present during the [M]other's mental situations or substance abuse." Appellant's Br. at 6. Mother claims that case manager Nail "made a number of uncorroborated fantastical statements about her initial interview with" Mother.[2] *Id*. at 7. Mother admits her struggles with mental illness but notes that she participated in mental health treatment in December 2019 after V.R. was removed from her care.

[23] After reviewing the testimony of the family case managers and Mother's testimony, the trial court was not convinced that Mother's mental health condition was stable. The trial court acknowledged that V.R. was with her grandmother on November 25, 2019, when DCS investigated the initial report concerning Mother's mental health and drug use. But the court was concerned that returning V.R. to Mother's home would endanger V.R. because Mother required hospitalization for her mental illness in December 2019, and Mother refused to address her substance abuse issues. The trial court stated, "I do not feel comfortable in [] letting somebody who is using methamphetamine and

---

[2] Contrary to Mother's claim, family case manager Nail's testimony related Mother's statements to her during DCS's initial November 25, 2019, investigation. With her own testimony, Mother attempted to argue that her statements to Nail concerning dressing up like a clown and carrying a butcher knife were misconstrued. It was within the trial court's discretion to weigh Nail's recollection of their initial conversation against Mother's explanation. *See In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012).

suffering from mental illness making decisions" about when it is safe for V.R. to be in Mother's home. Tr. p. 128.

[24] The trial court also found that Mother was resistant to services, and therefore, it "is necessary for the department to intervene and to get services to the family unit so that we can reunite the family[.]" *Id.* Given the evidence that Mother hears voices and made statements about sacrificing V.R. or her roommate, *see* Tr. p. 13, the court was concerned for V.R.'s safety if she was returned to Mother's home. Tr. p. 129 ("The Court's not going to wait around for something bad to happen when I get something like this[.]"); *see also*, *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011) (holding that the CHINS statute does not require the juvenile court and DCS to wait until a child is physically or emotionally harmed to intervene; rather, a child may be determined to be a CHINS if his or her physical or mental condition is endangered).

[25] It was also reasonable for the trial court to infer that Mother used methamphetamine more than once.[3] Mother admitted to using methamphetamine to case manger Nail on November 25, 2019. On December 17, 2019, at a family team meeting, Mother again admitted that she used

---

[3] For this reason, we are not persuaded by Mother's citation to *Perrine v. Marion County Office of Child Services*, 866 N.E.2d 269, 277 (Ind. Ct. App. 2007). In *Perrine*, our court held that a "single admitted use of methamphetamine, outside the presence of the child and without more, is insufficient to support a CHINS determination." *Id.*

methamphetamine. But at the fact-finding hearing, Mother denied methamphetamine use and refused to discuss her substance abuse issues.

[26] Mother cites to her own her testimony to support her argument that V.R. is not a CHINS. But it is not our role to reweigh the evidence and the credibility of the witnesses. *See In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012); *see also Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (explaining that appellate courts grant latitude and deference to trial courts in family law matters). The trial court was understandably concerned that Mother's refusal to acknowledge and receive treatment for her substance abuse issues, combined with Mother's failure to consistently treat her mental illness, seriously endangers V.R.'s well-being.

[27] For all of these reasons, we conclude that DCS proved by a preponderance of the evidence that V.R. is a CHINS pursuant to Indiana Code section 31-34-1-1.

## Conclusion

[28] The trial court's error in admitting Dr. Coy's telephonic testimony was harmless. And DCS proved by a preponderance of the evidence that V.R. is a CHINS. We therefore affirm the trial court's order adjudicating V.R. a CHINS.

[29] Affirmed.

Bradford, C.J., and Najam, J, concur.