## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2020, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dorothy Ferguson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of K.H., a Child Alleged to be in Need of Services,

C.M. (Mother) and
P.H. (Father),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

November 20, 2020

Court of Appeals Case No.
20A-JC-1137

Appeal from the
Madison Circuit Court

The Honorable
G. George Pancol, Judge

Trial Court Cause No.
48C02-2003-JC-93

**Vaidik, Judge.**

# Case Summary

[1] C.M. ("Mother") and P.H. ("Father") (collectively "Parents") appeal the trial court's determination that their daughter, K.H. ("Child"), is a Child in Need of Services (CHINS). We affirm.

# Facts and Procedural History

[2] Mother and Father are the biological parents of Child, born in November 2014. In 2016, the Department of Child Services (DCS) assessed Parents for drug use. Another assessment, also for drug use, was conducted in 2019. In March of this year, DCS again assessed Parents after receiving a report that Parents were "using substances" and "allowing [Child's] grandmother to watch her while using substances." Tr. p. 30. On March 10, Family Case Manager (FCM) Caycia Ransbottom went to Parents' home to make the assessment. Mother, Child's maternal grandmother, and Child were present at the home. The home "smelled like marijuana," and Mother was "very manic," "yelling," "pacing," and "slurring her words." *Id.* at 33, 41. Mother and the grandmother admitted they were "using [marijuana] that day," but both refused to take a drug test. *Id.* at 41. FCM Ransbottom left and returned later that day with law enforcement. This time, Mother took a drug test and "admitted that there would be cocaine on her drug screen" and that Father would test positive for marijuana and cocaine. *Id.* at 33. Mother's test was positive for cocaine and marijuana. Child's maternal grandmother also took a drug test, which was positive for marijuana. When Father arrived home later during the assessment, he was not drug tested.

Finding the report "substantiated against [Mother] and grandmother," DCS removed Child from the home and placed her with her paternal grandmother. *Id.* at 31. The following day, DCS filed a petition alleging Child was a CHINS because there was "no sober adult care giver present in [Child's] home." Appellant's App. Vol. II p. 45.

[3] In May, the trial court conducted the fact-finding hearing. The court admitted two exhibits—which Parents stipulated to—showing Mother had two positive drug screens. The first drug screen was taken at the assessment on March 10. The second was taken on March 19 and was positive for "low level[s]" of THC. Tr. p. 49. All other drug tests for Mother were negative.

[4] FCM Ransbottom then testified about the events leading to Child's removal, specifically that Child was removed "because she did not have a sober caregiver" and was at "high risk" of "future abuse or neglect" because DCS had previously been involved with the family due to Parents' drug use. *Id.* at 35, 36. FCM Timothy Johnson, who took over for FCM Ransbottom after Child's removal, testified he recommended Parents undergo a "substance use assessment" and counseling and that he did not "believe that [Parents] would do so on their own[.]" *Id.* at 45, 49.

[5] After DCS presented its case, Parents moved to dismiss the case. The following exchange occurred:

> [Parents' Attorney]: . . . I would, at this time, move to dismiss. I don't feel that the department has met their burden of proof at this time to allege that the child is a child in need of services. The

only thing that they proved is that my clients failed one (1) drug screen and [] all the other testimony presented here today is that the child has been provided for and safe [in] my clients['] care.

The Court: Let me just tell you where I am right now without precluding you because I haven't heard your side of the case yet, but we have parents that have stipulated to a drug screen and sounds like admitted and that's the first step and unfortunately mom didn't even get to have her child sleep with her on mother's day so my position at this point is, that I'm willing to return this child based on drug screens to the mother and father but I am going to make at this point a finding that they would benefit from the services and I would also make a statement on the record that they do a substance abuse evaluation, follow the recommendations and show me continued clean drug screens and completion of that treatment then I will make a commitment that at that point I would feel that they're ready and I will dismiss the case. So if you want to present evidence that's where I am at this point.

*Id.* at 52-53. Later, before Parents presented their evidence, the trial court stated, "I do need to warn you that I am gonna consider this evidence as well as the evidence I already heard for placement." *Id.* at 55.

[6] After Parents presented their case, the court stated, "I didn't find any reason to change my position either way, so I'm gonna make a finding that this child is in need of services . . . ." *Id*. at 64. A dispositional hearing was held immediately thereafter, and the court ordered Child returned to Parents but required them to submit to random drug tests and complete a substance-abuse evaluation.

[7] Parents now appeal.[1]

# Discussion and Decision

## I. Due Process

[8] Parents contend the trial court violated their due-process rights. Due-process protections are vital at all stages of CHINS proceedings because "[e]very CHINS proceeding has the potential to interfere with the rights of parents in the upbringing of their children." *In re K.D.*, 962 N.E.2d 1249, 1258 (Ind. 2012) (citation omitted). Due process requires the opportunity to be heard at a meaningful time and in a meaningful manner. *Thompson v. Clark Cnty. Div. of Family & Children*, 791 N.E.2d 792, 795 (Ind. Ct. App. 2003), *trans. denied*. Parents did not raise a due-process claim before the trial court, and thus we may consider it waived. *See Hite v. Vanderburgh Cnty. Office of Family & Children*, 845 N.E.2d 175, 180 (Ind. Ct. App. 2006). But we prefer to resolve due-process claims on the merits.

[9] Parents argue their due-process rights were violated because the trial court "had made a determination as to the evidence prior to [Parents] presenting their case in chief" and then attempted "to deter them from presenting their case[.]" Appellant's Br. p. 14. To support this assertion, Parents point to the trial court's

---

[1] In September, while this appeal was pending, Parents filed a motion to dismiss in the trial court. As of the date of this opinion, it has not been ruled on.

comments before their case-in-chief. However, Parents take these comments out of context and mischaracterize the record.

[10] The trial court's comments were in response to Parents moving to dismiss the case. This prompted the court to reply: "Let me just tell you where I am right now without precluding you because I haven't heard your side of the case yet." Tr. p. 53. The court then discussed DCS's evidence and what the court's findings would be on that evidence alone. The court concluded by saying, "So if you want to present evidence, that's where I am at this point." *Id.* The court's comments were simply an explanation of its reasoning regarding the motion to dismiss and how the case could proceed. Parents were then allowed to present their case.

[11] Furthermore, the trial court did not "deter" Parents from presenting their case by saying, "I am gonna consider this evidence as well as the evidence I already heard for placement." *Id.* at 55. A review of the entire record reveals that the trial court had previously suggested—based on the DCS's evidence—that it was inclined to return Child to Parents. The court then made sure Parents understood that if they presented their case, it would consider any new evidence, which could alter its decision. This far from denied Parents a meaningful opportunity to be heard. On the contrary, it was an effort to make sure Parents knew what their options were going forward.

[12] For these reasons, the trial court did not deny Parents their due-process right to be heard.

# II. Sufficiency

[13]     Parents also argue the evidence presented at the fact-finding hearing was insufficient to support the CHINS finding. When determining whether there is sufficient evidence to support a CHINS determination, we neither reweigh the evidence nor judge the credibility of the witnesses. *In re D.F.*, 83 N.E.3d 789, 796 (Ind. Ct. App. 2017). Rather, we consider only the evidence that supports the trial court's determination and reasonable inferences drawn therefrom. *Id.*

[14]     The trial court found Child to be a CHINS under Indiana Code section 31-34-1-1, which provides a child is a CHINS if that child is under eighteen and:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> > (A) when the parent, guardian, or custodian is financially able to do so; or
> >
> > (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and
>
> (2) the child needs care, treatment or rehabilitation that the child:
>
> > (A) is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1. DCS has the burden of proving by a preponderance of the evidence that the child is a CHINS. Ind. Code § 31-34-12-3. In sum, a CHINS adjudication "requires three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014), *reh'g denied*. Parents assert DCS failed to show all three elements. We disagree.

[15] For the first element, the record sufficiently shows Parents' actions seriously endangered Child. Parents argue their case is analogous to *Perrine v. Marion County Office of Child Services*, where this Court held a single use of methamphetamine outside the presence of child, without more, was insufficient to support a CHINS determination. 866 N.E.2d 269, 277 (Ind. Ct. App. 2007). The facts here differ, as Parents' drug use was neither limited to a single instance nor done outside the presence of Child. Mother admitted to FCM Ransbottom she and Child's grandmother—the only two adults in the home with five-year-old Child—had smoked marijuana that day. The home also smelled of marijuana, and Mother appeared under the influence, acting manic, yelling, pacing, and slurring her words. Mother's drug screen revealed she was positive for cocaine and marijuana. This is sufficient to prove Mother was caring for Child while under the influence of illegal substances. Failing to provide such a young child with a sober caregiver endangers them. *See In re J.L.*, 919 N.E.2d 561, 564 (Ind. Ct. App. 2009) (finding the "endangered" element

met where the mother used illegal substances while her child slept, leaving the child "without any responsible adult care and supervision").

[16] Regarding the second element, Parents argue Child "does not have any unmet needs." Appellant's Br. p. 6. But, as stated above, the record clearly shows Child lacked sober supervision, an undoubtedly important need for a five-year-old. As to the third element, there is sufficient evidence this unmet need will not be met without the coercive intervention of the State. DCS contends coercive intervention is necessary to meet Child's need as "it remains to be seen whether Parents' sobriety continues without the coercive intervention of the court." Appellee's Br. p. 16. We agree. Concerns about continued drug use are well founded, as this is Parents' third involvement with DCS for substance-abuse issues since Child was born in 2014. Despite this past involvement, both Parents continued to abuse drugs and leave Child with no sober caregiver. And even after testing positive for cocaine and marijuana and having Child removed from the home, Mother failed a subsequent drug screen. FCM Johnson also testified that, after working with Parents for two months, he did not believe they would seek out a substance-abuse evaluation or other services on their own. This is sufficient to show Child's need for sober supervision will not be met without coercive intervention.

[17] We conclude the trial court properly found Child to be a CHINS.

[18] Affirmed.

Bailey, J., and Weissmann, J., concur.